HAND-DELIVERED

FILED
Statesville
1/7/2026
U.S. District Court
Western District of N.C.

Civil Action No. ___5:23-cv-26-MEO-DCK___

---

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# IREDELL COUNTY, STATESVILLE DIVISION

---

**ANWAR AALAAM,**
Plaintiff,

v.

**USAA FEDERAL SAVINGS BANK.,**
Defendant.

---

## ORIGINAL COMPLAINT

---

### JURY TRAIL DEMANDED
### EQUITABLE JURISDICTION INVOKED
### CLAIMS SOUND IN LAW AND EQUITY
### RIGHT TO AMEND RESERVED
### ALL RIGHTS RESERVED

---

**Anwar Aalaam**
Pro se
100 Brookmeade Drive
Statesville, North Carolina 28625
Telephone: (916) 365-5291
Email: anwar.aalaam@gmail.com

## PRELIMINARY STATEMENT

This action arises from Defendant USAA Federal Savings Bank's origination, servicing, enforcement, repossession, reporting, and monetization of an alleged consumer automobile obligation without lawful standing, proper disclosure, or compliance with governing federal and state law. Plaintiff does not seek an advisory opinion, abstract declaration, or policy determination. Rather, Plaintiff brings concrete statutory and common-law claims based on specific acts and omissions that resulted in the wrongful repossession and sale of Plaintiff's vehicle, the conversion of property and negotiable instruments, false and misleading credit reporting, and the assertion of enforcement authority Defendant could not lawfully substantiate.

The Complaint pleads enacted law, not theory. It invokes express statutory duties imposed by federal consumer-protection statutes, the Uniform Commercial Code as adopted by North Carolina, and North Carolina common law, and it applies those duties to detailed factual allegations establishing breach, causation, and damages. The claims asserted are inherently fact-dependent and discovery-driven, as material evidence concerning funding, transfers, securitization, accounting treatment, authority to enforce, and internal compliance resides exclusively within Defendant's possession and control. At the pleading stage, Plaintiff is not required to prove these facts; Plaintiff is required only to allege them plausibly, which the Complaint does.

Plaintiff's claims are further grounded in the fundamental principle that a consumer has the lawful right to inquire into, dispute, and obtain accurate information concerning an alleged obligation affecting property and credit. Federal statutes, implementing regulations, and incorporated contractual duties entitle Plaintiff to request complete and truthful disclosures, including but not limited to a full accounting, identification of the true creditor, chain of title or authority to enforce, and confirmation of compliance with applicable servicing and enforcement requirements. Correspondingly, Defendant bears an affirmative statutory and contractual duty to respond accurately, completely, and in good faith to such requests. Plaintiff's claims arise not from abstraction or conjecture, but from Defendant's repeated failure to satisfy these enacted disclosure and response obligations. The Complaint alleges that Plaintiff exercised these rights repeatedly and through documented administrative channels, and that Defendant failed or refused to provide substantiated responses, instead

i

proceeding with enforcement activity notwithstanding unresolved disputes and information asymmetry.

Nothing in the Complaint advances extra-legal concepts, novel monetary theories, or creative interpretations of law. Plaintiff pleads enacted statutes, black-letter commercial principles, and settled consumer-protection doctrines recognized by courts nationwide. To the extent Defendant may attempt to reframe statutory compliance disputes as "theory" or "creative writing," such characterizations improperly substitute labels for analysis and cannot defeat well-pleaded claims grounded in positive law.

This pleading is necessarily detailed. Plaintiff proceeds pro se, is subject to heightened scrutiny and prefiling constraints, and has previously experienced judicial mischaracterization of statutory claims through the adoption of defense narratives at the dismissal stage. In this Court, a "short and plain statement" unsupported by explicit statutory grounding has proven insufficient to prevent recharacterization, premature fact-weighing, or dismissal based on labels rather than law. Accordingly, Plaintiff pleads statutes, authoritative sources, and application together to ensure that the claims are adjudicated as written and that the governing legal framework is not displaced by advocacy paraphrasing.

This action is also informed by the broader regulatory backdrop governing Defendant's conduct as a federally chartered financial institution. Defendant USAA Federal Savings Bank is subject to supervision and enforcement authority of the Office of the Comptroller of the Currency, which has publicly identified deficiencies within USAA's operations relating to governance, compliance, risk management, and internal controls. Plaintiff does not ask this Court to adjudicate regulatory enforcement matters; however, the existence of formal supervisory findings underscores the reasonableness of Plaintiff's inquiries, the plausibility of the alleged noncompliance, and the necessity of discovery where internal records and compliance mechanisms are exclusively within Defendant's control. The Complaint pleads Defendant's conduct based on enacted law and concrete facts, not regulatory speculation, while acknowledging the context in which Plaintiff's injuries arose.

Plaintiff brings this action in good faith and in the interest of judicial economy, seeking a lawful resolution based on the merits rather than continued opacity. Discovery is necessary to address information asymmetry and to permit adjudication based on evidence rather than assumption. Plaintiff seeks no special treatment, only the opportunity to obtain

records solely within Defendant's control and to have the claims adjudicated under the statutes and rules that govern them.

The Complaint is structured to satisfy Rule 8 and to foreclose improper Rule 12(b)(6) dismissal. Each count identifies the governing rule of law, alleges specific conduct constituting breach, explains causation, and pleads concrete damages. Where Defendant's anticipated defenses depend on disputed facts such as ownership, standing, compliance with rescission and billing-error obligations, the legal effect of tendered negotiable instruments, and the lawfulness of repossession; those disputes cannot be resolved at the pleading stage without impermissible fact-finding. Dismissal would require the Court to credit unsworn assertions over well-pleaded allegations, to impose extra-statutory pleading requirements, or to reframe enacted law as "theory," each of which exceeds the proper scope of Rule 12(b)(6).

At this stage, the Court's role is limited to assessing the legal sufficiency of the pleaded claims, not to resolving disputed facts, weighing competing narratives, or crediting institutional explanations over well-pleaded allegations. Questions concerning funding, ownership, standing, compliance with rescission and billing-error obligations, authority to enforce, and the disposition or monetization of the alleged obligation are inherently factual and cannot be resolved on a motion to dismiss without impermissible fact-finding. Where such matters depend on documents, internal policies, transfers, or accounting records exclusively within Defendant's possession, dismissal under Rule 12(b)(6) would be improper.

Finally, this action preserves constitutional protections and appellate posture. Plaintiff alleges concrete injury to property, credit, and statutory rights; demands a jury trial on fact-intensive claims; and demonstrates the necessity of discovery where information asymmetry exists. If dismissal were granted notwithstanding these pleadings, it would present clean, reviewable errors of law, including misapplication of Rule 12(b)(6), improper recharacterization of statutory claims, and denial of discovery in the face of exclusive control of evidence by Defendant.

For these reasons, and as set forth in detail below, the Complaint states multiple plausible claims for relief. Any motion to dismiss must be denied so that this action may proceed to discovery and adjudication on the merits.

## COMPLAINT

**COMES NOW,** Plaintiff Anwar Aalaam ("Plaintiff"), a living man domiciled in North Carolina State, appearing pro se, and reserving all rights, brings this civil action against USAA Federal Savings Bank ("Defendant" or "USAA"), and alleges as follows:

## NATURE OF THE ACTION

This is a civil action arising from Defendant's unlawful conduct in originating, enforcing, servicing, reporting, and monetizing an alleged consumer automobile retail installment transaction without lawful standing, proper disclosure, or compliance with governing federal and state law.

This action does not seek an advisory opinion, abstract declaration, or policy determination. It arises from concrete acts and omissions by Defendant that resulted in:

- o the wrongful repossession and sale of Plaintiff's vehicle,
- o the conversion of Plaintiff's property and negotiable instruments,
- o false and misleading credit reporting, and
- o the assertion of enforcement authority Defendant could not lawfully substantiate.

Plaintiff brings this action to enforce existing statutory, regulatory, contractual, and common-law duties, including but not limited to duties imposed by:

- o the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.),
- o the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.),
- o the Truth in Lending Act (15 U.S.C. §§ 1635, 1666) and Regulation Z (12 C.F.R. Part 1026),
- o the Uniform Commercial Code as adopted in North Carolina,
- o and North Carolina's Unfair and Deceptive Trade Practices Act (N.C.G.S. § 75-1.1).

Defendant's misconduct includes, among other things:

- o enforcing an alleged obligation subject to conditions precedent that were never satisfied,
- o acting after rescission and arbitration election,

1

- o asserting rights under a revoked power of attorney,
- o concealing securitization and collateralization of the transaction, and
- o retaining benefits and proceeds without lawful entitlement.

At all relevant times, Defendant acted directly and through agents, contractors, affiliates, trustees, servicers, repossession vendors, and credit reporting furnishers, whose identities and roles are within Defendant's exclusive possession and control.

Plaintiff expressly reserves the right to amend this Complaint to add additional defendants, including but not limited to affiliated entities, securitization trusts, trustees, servicers, repossession agents, and credit furnishers, upon confirmation of their roles through discovery.

## II. PRO SE STATUS AND LIBERAL CONSTRUCTION

Plaintiff brings this action pro se and respectfully requests that this Court recognize and apply the well-established standards governing pleadings filed by unrepresented litigants. Courts are required to liberally construe pro se complaints and hold them to less stringent standards than pleadings drafted by attorneys, while still applying the governing substantive law. The United States Supreme Court has repeatedly affirmed that pro se filings must be viewed with understanding and interpreted to state a valid claim whenever possible. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972). The Supreme Court has further held that pro se complaints should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Federal courts have likewise recognized that district courts bear a special responsibility to ensure that pro se litigants receive fair consideration and that potentially meritorious claims are not dismissed on technical or procedural grounds. Courts are tasked with affording a meaningful opportunity for amendment where deficiencies may be cured through clarification or modification. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981); *Palmer v. City of Decatur*, 814 F.2d 426, 428–29 (7th Cir. 1987).

Liberal construction does not permit dismissal where well-pleaded factual allegations plausibly establish entitlement to relief, particularly where resolution of disputed issues requires discovery of information and records within Defendant's exclusive possession and control. At the pleading stage, Plaintiff is not required to prove the claims asserted, but only

2

to allege sufficient facts to raise the right to relief above a speculative level. Although proceeding pro se, Plaintiff has undertaken substantial and deliberate efforts to substantiate the claims asserted herein prior to filing suit. Plaintiff pursued a comprehensive administrative process in good faith, issuing multiple written notices, demands for validation and disclosure, and opportunities to cure, thereby affording Defendant repeated chances to clarify, correct, or substantiate its claimed authority and compliance. Defendant failed or refused to do so.

Plaintiff further engaged forensic and documentary analysis, which identified material irregularities related to securitization, accounting, and compliance with governing law, including violations implicating the Truth in Lending Act and the Uniform Commercial Code. These findings corroborate Plaintiff's allegations and demonstrate that the claims asserted are grounded in factual investigation rather than conjecture. Plaintiff respectfully requests that this Court apply the doctrine of liberal construction to ensure that the claims asserted are adjudicated on their merits, that discovery is permitted where material facts lie within Defendant's control, and that dismissal is not premised on technical pleading deficiencies or premature fact-weighing inconsistent with Rule 12(b)(6).

### III. **PARTIES**

Plaintiff Anwar Aalaam ("Plaintiff") is a natural person domiciled in the State of North Carolina and is the real party in interest with respect to the consumer automobile retail installment transaction that is the subject of this action. Plaintiff is the purchaser and obligor associated with the alleged Retail Installment Sales Contract ("RISC") and related credit transaction at issue. Plaintiff entered into the transaction in good faith and has suffered concrete financial, legal, and property harm as a direct and proximate result of Defendant's acts and omissions, including but not limited to unlawful representations, failure to disclose material information, improper assertions of authority, wrongful repossession and sale of Plaintiff's vehicle, and threats or acts of enforcement unsupported by lawful documentation or standing.

Defendant USAA Federal Savings Bank ("Defendant" or "USAA") is a federally chartered savings bank engaged in the business of consumer lending, servicing, credit reporting, and enforcement, including automobile retail installment transactions. Defendant conducts business within the State of North Carolina and nationwide and has represented,

expressly and by implication, that it possessed authority to originate, fund, service, collect upon, report, and/or enforce the alleged RISC and related obligations associated with Plaintiff's vehicle. Defendant purposefully availed itself of the privileges of conducting activities within this forum, including activities giving rise to the claims asserted herein.

At all relevant times, Defendant acted in a regulated and professional capacity directly affecting Plaintiff's legal, financial, and property rights. Defendant owed Plaintiff duties imposed by federal and state statutes, implementing regulations, the Uniform Commercial Code as adopted in North Carolina, and common-law principles governing consumer credit transactions, disclosure, servicing, enforcement, repossession, and credit reporting. Defendant further assumed duties by voluntarily undertaking to act as an originating, servicing, and enforcement entity and by making representations upon which Plaintiff was reasonably expected to rely.

Plaintiff alleges that Defendant failed to comply with these duties by, among other things, failing to provide accurate and complete disclosures, asserting servicing or enforcement authority without proper documentation or lawful standing, engaging in or facilitating securitization and collateralization of the transaction without adequate notice or transparency, continuing collection, reporting, and enforcement activity despite unresolved disputes, rescission, and arbitration election, and exercising remedies through wrongful repossession and sale of Plaintiff's vehicle. Defendant's conduct forms the factual and legal basis for the claims asserted in this action.

## IV. <u>JURISDICTION AND VENUE</u>

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the laws of the United States, including but not limited to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1635 and 1666, together with their implementing regulations, including Regulation Z, 12 C.F.R. Part 1026. Plaintiff further asserts claims arising under the Uniform Commercial Code as adopted by the State of North Carolina, as well as North Carolina statutory and common law, which are properly before this Court pursuant to 28 U.S.C. § 1367.

4

This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff has suffered substantial financial loss, impairment of property rights, credit damage, and additional consequential damages arising from Defendant's conduct, the full extent of which will be established through discovery.

This Court has personal jurisdiction over Defendant because Defendant maintains systematic and continuous contacts with the State of North Carolina. Defendant conducts substantial business within this State, including the origination, servicing, collection, reporting, repossession, and attempted enforcement of consumer automobile retail installment transactions, including the transaction at issue in this action. Defendant purposefully availed itself of the privileges and benefits of conducting activities within this forum, and Plaintiff's claims arise directly from Defendant's contacts with the State of North Carolina.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in, is subject to personal jurisdiction in, and transacts business within this District, and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, including the servicing, enforcement, credit reporting, repossession, and disposition of Plaintiff's vehicle. Venue is further proper because Defendant's conduct within this District forms the factual basis for the claims asserted herein, Plaintiff domiciles in this District, and litigating this action in this forum promotes judicial economy, convenience of the parties, and the interests of justice.

## V. RULE OF LAW AND INVOCATION OF EQUITY JURISDICTION

Defendant's conduct is governed by federal and state statutory law, including but not limited to the Uniform Commercial Code as adopted in North Carolina, federal consumer-finance statutes regulating consumer credit transactions, disclosure, servicing, collection, repossession, and credit reporting, and the implementing regulations promulgated thereunder. These authorities impose affirmative, non-discretionary duties of accuracy, transparency, lawful authority, and good-faith compliance upon entities that originate, service, report, collect upon, or seek to enforce retail installment sales contracts and related consumer obligations.

5

This action further invokes the equity jurisdiction of this Court because Defendant's conduct involves ongoing and irreparable harm, material information asymmetry, and the misuse of purported enforcement authority in a manner that cannot be adequately remedied by legal damages alone without factual development. Plaintiff seeks not only monetary relief, but equitable remedies necessary to protect property rights, prevent continued unlawful conduct, and restore the parties to their lawful positions, including declaratory relief, injunctive relief, restitution, and equitable accounting, as appropriate.

Courts possess broad authority to grant equitable relief where legal remedies are inadequate. As the United States Supreme Court has made clear, *"where the equitable jurisdiction of the court has properly been invoked, the court has the power to decide all relevant matters in dispute and to award complete relief, even though the decree includes that which might be conferred by a court of law." Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). The complexity of consumer-credit securitization, collateralization practices, repossession procedures, and internal accounting mechanisms further supports the invocation of equity jurisdiction to ensure full and just relief.

*"Equity regards substance rather than form"* and does not permit parties to avoid accountability through labels, assumptions, or advocacy paraphrasing. The Court must therefore evaluate Defendant's actual conduct and compliance with governing law, rather than relying on characterizations that substitute narrative for analysis. *"Equity will not suffer a wrong without a remedy"* and requires that parties seeking to enforce rights do so with clean hands and in good faith. Given the nature of Defendant's alleged conduct, the continuing risk of harm to Plaintiff's property and credit interests, and Defendant's exclusive control over material facts necessary to assess lawful authority, funding, disclosure, and compliance, this Court's equitable jurisdiction is properly invoked to administer complete relief and to ensure that justice is done.

## VI. <u>FACTUAL ALLEGATIONS AND BACKGROUND</u>

On or about July 7, 2021, Plaintiff entered into a consumer automobile refinance transaction involving a 2016 Dodge Durango, VIN 1C4RDJEG7GC331593 (the "Vehicle"). The refinance transaction was intended to satisfy and replace a prior vehicle financing obligation originally entered into with Wells Fargo, and to establish a new consumer credit obligation governed by a Retail Installment Sales Contract ("RISC") and related refinance

6

agreement/credit application. Plaintiff entered into the refinance transaction in good faith, with the reasonable expectation that the alleged obligation would be lawfully funded, accurately disclosed, properly serviced, and enforced only in strict compliance with governing federal and state law, as well as the express terms of the RISC and refinance agreement.

The refinance agreement and RISC contained material conditions precedent to enforceability, including requirements related to funding, disclosure, notice, and lawful authority to enforce remedies. Plaintiff reasonably relied on Defendant's representations that these conditions would be satisfied and that Defendant possessed lawful authority to administer and enforce the transaction. Following execution of the refinance agreement, Defendant USAA Federal Savings Bank represented itself as the party entitled to service, collect upon, report, and enforce the alleged obligation associated with the Vehicle. At the same time, Defendant failed to clearly and transparently disclose whether and how the refinance transaction was funded, whether the obligation was assigned, securitized, or pledged as collateral, and whether Defendant retained lawful standing to enforce the alleged debt.

Plaintiff later discovered, through publicly available filings, correspondence, and Defendant's own statements, that automobile refinance transactions of the type at issue are routinely monetized, collateralized, transferred, or securitized, including through trust structures and third-party collateral arrangements. These material facts were not disclosed to Plaintiff at the time of the refinance transaction or thereafter. Despite the existence of these undisclosed arrangements, Defendant continued to communicate representations expressly and by implication that it possessed lawful ownership, standing, and authority to enforce the refinance obligation, repossess the Vehicle, retain proceeds, and furnish information regarding the account to consumer reporting agencies.

Acting in good faith, Plaintiff disputed Defendant's claimed authority and issued multiple written notices, billing-error disputes, requests for information, and demands for validation and accounting. Plaintiff specifically requested documentation establishing funding, complete GAAP-Compliant accounting, ownership, standing, chain of authority, and compliance with statutory and contractual prerequisites. Defendant failed to provide complete, verified, or lawful responses substantiating its claims.

7

Rather than curing these deficiencies, Defendant continued collection, enforcement, and credit-reporting activity, including asserting delinquency, charging off the alleged balance, and ultimately repossessing and selling Plaintiff's Vehicle, despite unresolved disputes, rescission notices, and Plaintiff's election of arbitration. Defendant's repossession and disposition of the Vehicle occurred without proof of lawful standing, without satisfaction of express contractual conditions precedent, and while material disputes remained unresolved. Defendant further retained proceeds and asserted continuing balances without providing lawful accounting or demonstrating entitlement to do so. As a direct and proximate result of Defendant's acts and omissions, Plaintiff suffered financial loss, loss of use and ownership of the Vehicle, damage to credit reputation, emotional distress, and impairment of statutory and contractual rights.

Plaintiff alleges that Defendant's conduct was not the result of mere oversight or clerical error but instead reflects a pattern and practice of asserting enforcement authority while withholding proof, failing to disclose material facts, and monetizing consumer automobile refinance transactions in a manner inconsistent with governing law and contractual obligations. Plaintiff seeks legal and equitable relief to address these harms, including relief designed to halt continued misuse of purported authority, restore Plaintiff's rights and interests, compel disclosure and accounting of material facts within Defendant's control, and ensure that Defendant is held accountable for violations of federal and state law. Plaintiff reserves the right to supplement these allegations through discovery as additional facts are confirmed.

## VII. CHRONOLOGICAL EVENTS

(Administrative Exhaustion and Documented Notice)

The following chronology sets forth a fact-based record of Plaintiff's correspondence, disputes, notices, and Defendant's enforcement activity, demonstrating repeated notice, good-faith attempts to resolve the dispute, and Defendant's continued noncompliance.

*July 7, 2021*: Plaintiff entered into a consumer automobile refinance transaction with Defendant USAA Federal Savings Bank involving a 2016 Dodge Durango, VIN 1C4RDJEG7GC331593, intended to satisfy and replace a prior vehicle financing obligation originally held by Wells Fargo.

8

**August 3, 2023**: Plaintiff tendered a collateralized promissory note / negotiable instrument in the amount of $29,167.56, together with a Letter of Instruction, via Registered Mail No. RB885 216 024US to the CFO of USAA. USAA acknowledged receipt, as reflected by a Return Receipt stamped August 15, 2023.

**October 20, 2023**: Plaintiff sent a Letter of Instruction, Notice of Billing Error, Notice of Cease and Desist, and Letter for Claim of Credit via Certified Mail No. 7022 3330 0000 4765 5171 to the CFO of USAA. USAA acknowledged receipt on October 24, 2023.

**November 9, 2023**: Plaintiff sent a Letter of Instruction, Notice of Fault in Dishonor, and Opportunity to Cure via Certified Mail No. 7022 3330 0000 4765 5270 to the CFO of USAA. USAA acknowledged receipt on November 13, 2023.

**November 29, 2023**: Plaintiff sent a Letter of Instruction, Affidavit, and Notice of Rescission via Certified Mail No. 7022 3330 0000 4765 5508 to the CFO of USAA. USAA acknowledged receipt on December 13, 2023.

**January 3, 2024**: Plaintiff sent a Letter of Instruction and Second Notice of Rescission via Certified Mail No. 7018 1130 0001 8034 6269 to the CFO of USAA. USAA acknowledged receipt on January 9, 2024.

**January 10, 2024**: Plaintiff sent a Notarized Affidavit of Notice of Billing Error via Certified Mail No. 7018 1130 0001 8034 5743 to the CFO of USAA. USAA acknowledged receipt on January 19, 2024.

**January 20, 2024**: USAA sent Plaintiff a Notice of Right to Cure Default and Intent to Repossess, while failing to address active disputes and furnish requested information.

**January 31, 2024**: Plaintiff responded to USAA's January 20, 2024, notice with a Notice of Fault and Objection, citing USAA's failure to provide requested validation and accounting, via Certified Mail No. 7018 1130 0001 8034 5828 to the CFO of USAA. USAA acknowledged receipt on February 5, 2024.

**February 8, 2024**: Plaintiff sent a response to USAA's February 2, 2024, correspondence, stating that the dispute remained unresolved and that USAA remained noncompliant with the Notices of Rescission, via Certified Mail No. 7018 1130 0001 8034 5958 to USAA. USAA acknowledged receipt on February 13, 2024.

9

*February 15, 2024*: Plaintiff sent a Letter of Intent to Arbitrate, invoking the contractual arbitration provision, via Certified Mail No. 7018 1130 0001 8034 5965 to USAA. USAA acknowledged receipt on February 21, 2024.

*March 20, 2024*: USAA repossessed Plaintiff's vehicle while the billing-error dispute, rescission notices, and arbitration election remained unresolved.

*March 29, 2024*: Plaintiff sent a Notarized Revocation of Power of Attorney, Affidavit, and Third Notice of Rescission via Certified Mail No. 9589 0710 5270 1481 3381 60 to USAA. USAA acknowledged receipt on April 2, 2024.

*May 16, 2024*: Plaintiff filed a CFPB complaint (Case No. 240517-14428972) regarding adverse reporting of an unverified debt and failure to comply with validation and dispute obligations. Supporting documentation was attached.

*May 20, 2024*: Plaintiff sent a GLBA / Regulation P Opt-Out Request requesting cessation of sharing nonpublic personal information with non-affiliated third parties via Certified Mail No. 7018 1130 0001 8034 6108 to USAA. USAA acknowledged receipt on May 24, 2024.

*August 7, 2024*: USAA sent notice stating that Plaintiff's vehicle had been sold for $7,600.00, leaving an alleged balance of $10,584.66.

*August 23, 2024*: Plaintiff sent a Demand for Return of Vehicle Property and Compensation, renewed request for debt validation, Fault in Dishonor, and Fourth Notice of Rescission of Security Interest via Certified Mail No. 9589 0710 5270 1481 3374 84 to USAA. USAA acknowledged receipt on August 27, 2024.

*September 10, 2024*: USAA sent a generic response that did not provide validation, accounting, or proof of authority.

*November 20, 2024*: Plaintiff sent a Notarized Affidavit of Loan / Extension of Credit Denial, together with a Notarized Affidavit of Proof of Service, via Certified Mail No. 9589 0710 5270 1481 3378 04 to the CFO of USAA. USAA acknowledged receipt on November 26, 2024.

*December 11, 2024*: Plaintiff filed a second CFPB complaint (Case No. 241211-17396759) regarding failure to validate the alleged debt, adverse reporting during an active

billing-error dispute, failure to honor the GLBA opt-out request, and repossession conducted without resolution of the dispute. Supporting documentation was attached.

*September 18, 2025*: USAA sent Plaintiff a check in the amount of $325.00 without explanation. Upon inquiry, Plaintiff was informed that the matter was "too old" to determine the purpose of the payment.

*November 26, 2025*: USAA sent a letter asserting that it followed "standard operating procedures of consumer reporting," stating that payments stopped, repossession followed, and that a balance remained due.

*December 15, 2025*: Plaintiff sent a written response to USAA's November 26, 2025, letter detailing factual inaccuracies, continued noncompliance, and unresolved disputes via Certified Mail No. 9589 0710 5270 0030 2666 57 to USAA. USAA acknowledged receipt on December 22, 2025.

*December 15, 2025*: Plaintiff filed a third CFPB complaint (Case No. 251215-26870841) to preserve the record and notify regulators of USAA's continued failure to comply with Requests for Information and dispute obligations. Supporting documentation was attached.

Plaintiff exhausted every reasonable avenue of approach prior to initiating litigation in an effort to resolve this matter without court intervention, including repeated written notices, disputes, requests for validation and accounting, rescission notices, arbitration election, regulatory complaints, and opportunities to cure. Defendant failed or refused to provide the documents, explanations, and substantiation solely within Defendant's possession and control necessary to resolve the dispute. Plaintiff therefore seeks judicial intervention to obtain discovery of those materials and to pursue recoupment of the harms suffered as a direct and proximate result of Defendant's acts and omissions.

## VIII. <u>FEDERAL STATUTORY COUNTS</u>

### COUNT I – Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681 et seq.

***Conclusion (Claim Statement)***

Defendant USAA Federal Savings Bank ("USAA") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., by furnishing and continuing to furnish inaccurate, misleading, and unverified credit information concerning Plaintiff's auto refinance account to consumer reporting agencies, and by failing to conduct a reasonable investigation or correct the reporting after receiving actual notice of Plaintiff's disputes.

***Rule (Governing Law and Duties)***

The FCRA imposes affirmative, non-delegable duties on furnishers of credit information to ensure that information reported to consumer reporting agencies is accurate, complete, and not misleading; 15 U.S.C. § 1681s-2(a). *Upon receiving notice of a consumer dispute from a consumer reporting agency, a furnisher must: (a) conduct a reasonable investigation; (b) review all relevant information provided by the consumer reporting agency; (c) report the results of the investigation; and (d) modify, delete, or permanently block reporting of information found to be inaccurate, incomplete, or unverifiable; 15 U.S.C. § 1681s-2(b).*

The United States Supreme Court has held that statutory consumer-protection claims are not subject to heightened pleading standards and must be evaluated under ordinary Rule 8 principles. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–15 (2002). Federal courts further recognize that whether a furnisher conducted a "reasonable investigation" is ordinarily a question of fact not suitable for resolution at the pleading stage, particularly where the furnisher controls the relevant records. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004).

***Application (USAA's Conduct)***

Plaintiff entered into a refinance loan agreement with USAA on or about July 7, 2021, relating to a 2016 Dodge Durango, VIN 1C4RDJEG7GC331593, originally purchased through Wells Fargo. Beginning no later than August 2023, Plaintiff formally disputed the alleged debt, tendered written notices of billing error, rescission, and validation demands, and expressly contested USAA's claimed authority, accounting, and enforcement rights.

12

Despite receiving repeated written notices and sworn affidavits disputing the validity, amount, and enforceability of the alleged obligation, USAA continued to report the account as delinquent, charged-off, or deficient to consumer reporting agencies.

Plaintiff filed multiple complaints with the Consumer Financial Protection Bureau ("CFPB"), which triggered formal dispute notifications to USAA from consumer reporting agencies under the FCRA. Upon receiving those dispute notices, USAA was legally obligated to conduct a reasonable investigation into the accuracy and verifiability of the reported information, including but not limited to: (a) the validity of the alleged balance before and after repossession and sale; (b) the legality of the repossession during an unresolved billing-error dispute; (c) the effect of Plaintiff's rescission notices; and (d) the accuracy of any deficiency balance reported.

USAA failed to conduct a reasonable investigation. Instead, USAA issued generic, conclusory responses asserting compliance with "standard operating procedures," without addressing Plaintiff's specific disputes, without producing validation, and without correcting or deleting inaccurate reporting. USAA continued furnishing adverse credit information despite unresolved disputes, incomplete accounting, and the absence of verified documentation substantiating the reported balance, thereby rendering the reporting materially misleading. USAA's conduct violated § 1681s-2(b) because the reported information was, at minimum, unverifiable and misleading, in light of the disputed repossession, unresolved billing errors, and contested deficiency calculation.

### Causation (Harm Resulting From the Violation)

As a direct and proximate result of USAA's FCRA violations, Plaintiff suffered concrete and particularized injuries, including but not limited to: (a) substantial damage to credit reputation and credit scores; (b) denial of credit opportunities; (c) increased borrowing costs; (d) emotional distress, anxiety, and reputational harm; and (e) time and expense incurred disputing false reporting. These harms were foreseeable and flowed directly from USAA's decision to continue reporting disputed and unverified information as fact.

### Damages and Statutory Entitlement

USAA's violations were willful or, at minimum, reckless, entitling Plaintiff to statutory damages, actual damages, punitive damages, costs, and legal fees pursuant to 15 U.S.C. §§ 1681n and 1681o. Whether USAA's investigation procedures were reasonable,

whether its reporting was accurate or misleading, and whether its violations were willful are fact-intensive issues dependent on internal records and communications exclusively within USAA's possession and control.

### *Rule 8 / Rule 12(b)(6) Preservation*

Plaintiff has alleged specific facts establishing duty, breach, causation, and damages under the FCRA, providing USAA with fair notice of the claim and the grounds upon which it rests. Accepting these well-pleaded allegations as true, as required at the pleading stage, Plaintiff has stated a plausible claim for relief under the FCRA. Dismissal would require improper fact-weighing and credibility determinations prohibited under Rule 12(b)(6). Accordingly, this Count must proceed to discovery so that Plaintiff may obtain records solely in USAA's possession necessary to fully adjudicate the merits of the claim.

## COUNT II – Violation of the Fair Debt Collection Practices Act
## 15 U.S.C. § 1692 et seq.

### *Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., by attempting to collect and enforce an alleged consumer debt without lawful authority, by misrepresenting the character, amount, and legal status of the debt, and by using unfair and unconscionable means in connection with collection and repossession activities after the account was in default and actively disputed.

### *Rule (Governing Law and Duties)*

The FDCPA prohibits debt collectors from using false, deceptive, misleading, unfair, or unconscionable means to collect or attempt to collect a consumer debt. 15 U.S.C. §§ 1692e, 1692f. A party qualifies as a "debt collector" under the FDCPA when it attempts to collect a debt that was in default at the time it obtained or asserted collection authority, or when it regularly collects debts owed or due. 15 U.S.C. § 1692a(6).

The United States Supreme Court has held that entities enforcing security interests may fall within the FDCPA when their conduct goes beyond mere enforcement and includes debt collection communications or demands. *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 88, 92–95 (2019). The Fourth Circuit has recognized that misrepresentations concerning a

14

party's authority to collect, the legal status of a debt, or the right to enforce constitute actionable violations of §§ 1692e and 1692f. *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 729–30 (D. Md. 2011); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376–78 (4th Cir. 2006). Whether an entity qualifies as a debt collector and whether its conduct violates the FDCPA are mixed questions of law and fact that are generally inappropriate for resolution at the pleading stage where authority, timing, and status are disputed. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86–87 (2017).

### Application (USAA's Conduct)

Plaintiff's auto refinance account entered default status no later than August 2023, at which point Plaintiff formally disputed the alleged debt, tendered notices of billing error and rescission, and demanded validation and accounting. After default and dispute, USAA engaged in conduct constituting debt collection, including sending notices of default, demands for payment, threats of repossession, credit reporting, and communications asserting that a balance remained due. At the time USAA engaged in this conduct, its authority to collect and enforce the alleged debt was disputed, unverified, and unsupported by documentation establishing lawful standing, funding, and compliance with contractual and statutory prerequisites.

USAA misrepresented the character and legal status of the alleged debt by asserting that a valid, enforceable balance remained due after repossession and sale of the vehicle, despite unresolved disputes, rescission notices, lack of accounting, and failure to substantiate the deficiency amount. USAA further misrepresented its authority to collect by acting as though it possessed unilateral enforcement rights while failing to demonstrate lawful ownership, servicing authority, or compliance with conditions precedent contained in the refinance agreement. USAA's continued collection activity during an active billing-error dispute, rescission period, and arbitration election constituted unfair and unconscionable means of collection in violation of 15 U.S.C. § 1692f. USAA's repossession of Plaintiff's vehicle while collection disputes remained unresolved and without substantiating its authority further constitutes prohibited conduct under §§ 1692e and 1692f.

### Additional Allegations Supporting FDCPA Violations (SEC and UCC Evidence)

Publicly available SEC disclosures issued by USAA and its affiliates further undermine USAA's representations of authority. Those filings identify USAA Auto Direct

Trust 2019-1 as the issuing entity for securitized automobile receivables, USAA Acceptance, LLC as the depositor, USAA Federal Savings Bank as sponsor, seller, and servicer, and U.S. National Bank Association as indenture trustee. These disclosures reflect that retail installment contracts and related payment streams are transferred, conveyed, or pledged into securitization structures, materially contradicting USAA's representations that it retained unilateral authority to collect, repossess, and enforce the alleged debt as a creditor in its own right.

In addition, a Texas Secretary of State UCC financing statement, File No. 01-093548, identifies USAA Federal Savings Bank as the Debtor and the Federal Home Loan Bank of Dallas as the Secured Party, granting a blanket security interest in, among other things, *"all instruments (including promissory notes), payment intangibles, chattel paper (including electronic chattel paper), and proceeds thereof."* The continuation of this filing, Amendment No. 20-00605195, confirms that USAA pledged present and future consumer credit instruments and proceeds as collateral for its own obligations. These SEC and UCC records demonstrate that USAA encumbered, transferred, or pledged interests in consumer receivables, including instruments of the same class as Plaintiff's refinance agreement, thereby calling into question USAA's claimed ownership, standing, and right to collect in its own name. Despite these encumbrances and transfers, USAA continued to represent to Plaintiff that it possessed full authority to collect, repossess, assess deficiencies, and report the alleged debt.

USAA's failure to disclose these material facts, coupled with its affirmative representations that it possessed lawful authority to enforce the alleged obligation, constitutes a false representation of the character, legal status, and ownership of the debt, and an unfair and unconscionable means of collection, in violation of 15 U.S.C. §§ 1692e and 1692f. At minimum, these publicly documented securitization and collateralization arrangements rendered USAA's claimed authority disputed, ambiguous, and unverifiable, triggering an obligation to cease collection until lawful authority could be substantiated. USAA instead proceeded with collection, repossession, and post-sale deficiency assertions, thereby compounding its FDCPA violations.

### *Causation (Harm Resulting From the Violation)*

As a direct and proximate result of USAA's FDCPA violations, Plaintiff suffered concrete injuries, including but not limited to: (a) loss of use and ownership of the vehicle; (b) financial loss and asserted deficiency balances; (c) emotional distress, anxiety, and humiliation; (d) damage to credit standing; and (e) expenses incurred attempting to stop unlawful collection activity. These injuries were the foreseeable consequence of USAA's decision to proceed with collection and enforcement despite lacking verified authority and despite Plaintiff's repeated disputes and notices.

### *Damages and Statutory Entitlement*

USAA is liable for statutory damages, actual damages, costs, and reasonable legal fees pursuant to 15 U.S.C. § 1692k. USAA's conduct was knowing, intentional, or in reckless disregard of Plaintiff's rights, as evidenced by repeated written notice, regulatory complaints, and USAA's continued reliance on boilerplate responses rather than lawful validation.

### *Rule 8 / Rule 12(b)(6) Preservation*

Plaintiff has alleged specific facts establishing that USAA acted as a debt collector, engaged in prohibited collection conduct, misrepresented the legal status and authority associated with the alleged debt, and caused concrete harm. Accepting these allegations as true, Plaintiff has stated a plausible claim for relief under the FDCPA. Dismissal at the pleading stage would require improper resolution of disputed facts concerning default status, authority, and the nature of USAA's conduct. Accordingly, this Count must proceed to discovery so that Plaintiff may obtain evidence exclusively within USAA's possession regarding its authority, communications, policies, and collection practices.

## COUNT III – Violation of the Truth in Lending Act
## 15 U.S.C. §§ 1635, 1666 and Regulation Z, 12 C.F.R. §§ 1026.13, 1026.23

### *Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1635 and 1666, and Regulation Z, 12 C.F.R. §§ 1026.13 and 1026.23, by failing to provide accurate and complete disclosures concerning the identity of the creditor and the nature of the transaction, by failing to properly respond to Plaintiff's billing-error notices and requests for information, and by continuing enforcement activity after receipt of rescission notices and during an unresolved billing dispute.

17

### Rule (Governing Law and Duties)

TILA is a remedial consumer-protection statute enacted to assure meaningful disclosure of credit terms and to protect consumers against inaccurate and unfair credit practices. 15 U.S.C. § 1601(a). TILA and Regulation Z require creditors to accurately disclose the identity of the creditor, the nature of the obligation, and material terms of the transaction, and to refrain from misleading or incomplete disclosures that would obscure the consumer's understanding of who holds rights to enforce the obligation. 15 U.S.C. § 1638; 12 C.F.R. § 1026.18.

Under 15 U.S.C. § 1666 and 12 C.F.R. § 1026.13, when a consumer submits a written notice of billing error, the creditor must timely acknowledge the dispute, conduct a reasonable investigation, and either correct the account or explain in writing why the account is correct. During the pendency of the investigation, the creditor may not engage in collection or enforcement activity with respect to the disputed amount.

TILA further provides consumers a right of rescission in applicable transactions where material disclosures are inaccurate or incomplete and requires creditors to cease enforcement activity upon receipt of a valid notice of rescission until the matter is resolved. 15 U.S.C. § 1635; 12 C.F.R. § 1026.23. The United States Supreme Court has held that TILA rescission is effected by notice, not by judicial decree, and that courts may not impose additional procedural hurdles at the pleading stage. *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 262–64 (2015). Upon receipt of a valid notice of rescission under 15 U.S.C. § 1635(b) and 12 C.F.R. § 1026.23(d), *a creditor is required, within the time prescribed by statute and regulation, to return any money or property given by the consumer, to cancel the security interest, and to take all steps necessary to reflect the termination of the security interest.* During this period, the creditor is prohibited from enforcing the obligation, retaining collateral, or proceeding with repossession or sale unless and until it has fully complied with its statutory rescission obligations. Failure to do so renders continued enforcement unlawful.

### Application (USAA's Conduct)

Plaintiff entered into a consumer automobile refinance transaction with USAA on or about July 7, 2021. At origination and thereafter, USAA represented itself as the creditor entitled to enforce the refinance agreement and related security interest. Publicly available SEC disclosures and UCC financing statements demonstrate that USAA participates in

18

securitization and collateral-pledging arrangements in which retail installment contracts and related payment streams are transferred, pledged, or encumbered through trusts and third-party security interests. These material facts were not disclosed to Plaintiff in a manner required by TILA.

Plaintiff issued multiple written billing-error notices and requests for information disputing the amount, enforceability, accounting, and authority underlying the alleged obligation. These notices triggered USAA's statutory duties under 15 U.S.C. § 1666 and 12 C.F.R. § 1026.13. USAA failed to conduct and complete a reasonable investigation, failed to provide a lawful accounting, and failed to clearly identify the true creditor or the effect of any transfers or collateralization. Instead, USAA issued generic responses that did not resolve the disputed issues or correct the account. While the billing-error dispute remained unresolved, USAA continued enforcement activity, including demands for payment, credit reporting, repossession of Plaintiff's vehicle, and post-sale deficiency assertions, in direct violation of TILA and Regulation Z.

Plaintiff further issued multiple notices of rescission, which, under TILA, required USAA to cease enforcement activity pending resolution of the rescission. USAA nevertheless proceeded with repossession and sale of the vehicle. USAA's failure to provide accurate creditor disclosures, failure to properly respond to billing-error notices, and continuation of enforcement activity during an active dispute and rescission period constitute violations of 15 U.S.C. §§ 1635 and 1666 and 12 C.F.R. §§ 1026.13 and 1026.23.

### Causation (Harm Resulting From the Violation)

As a direct and proximate result of USAA's TILA violations, Plaintiff suffered concrete harm, including but not limited to loss of property, loss of use of the vehicle, financial loss, credit damage, emotional distress, and deprivation of statutory rights intended to prevent precisely this type of conduct. These injuries were foreseeable and resulted directly from USAA's decision to disregard its disclosure and dispute-resolution obligations and to proceed with enforcement despite unresolved statutory violations.

### Damages and Statutory Entitlement

Plaintiff is entitled to actual damages, statutory damages, equitable relief, costs, and legal fees pursuant to 15 U.S.C. § 1640. USAA's violations were knowing or reckless, as

evidenced by repeated written notices, rescission demands, regulatory complaints, and USAA's continued reliance on boilerplate responses rather than statutory compliance.

### *Rule 8 / Rule 12(b)(6) Preservation*

Plaintiff has alleged specific facts establishing USAA's duties under TILA, its breach of those duties, causation, and resulting damages. Accepting these allegations as true, Plaintiff has stated a plausible claim for relief. Resolution of USAA's compliance with TILA, the adequacy of its disclosures, and the legality of its enforcement actions requires discovery into records and agreements solely within USAA's possession and control. Accordingly, dismissal at the pleading stage would be improper.

## COUNT IV – Declaratory Relief
## 28 U.S.C. § 2201

### *Conclusion (Claim Statement)*

An actual, present, and justiciable controversy exists between Plaintiff and Defendant USAA Federal Savings Bank ("USAA") concerning the parties' respective rights, duties, and legal relations arising from the refinance transaction, the asserted debt, the security interest, and USAA's claimed authority to collect, repossess, report, and enforce. Plaintiff seeks declaratory relief to resolve these disputes and prevent continued unlawful conduct.

### *Rule (Governing Law and Authority)*

The Declaratory Judgment Act authorizes federal courts to declare the rights and legal relations of interested parties in cases of actual controversy within the Court's jurisdiction. 28 U.S.C. § 2201(a). Declaratory relief is appropriate where it will clarify legal relations, settle uncertainty, and afford relief from insecurity caused by ongoing or threatened enforcement conduct. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Where a defendant continues to assert enforcement authority while material facts concerning standing, ownership, accounting, and statutory compliance remain disputed and within the defendant's exclusive control, declaratory relief is particularly appropriate to prevent irreparable and ongoing harm. *Steffel v. Thompson*, 415 U.S. 452, 471–72 (1974).

### *Application (Actual Controversy)*

USAA asserts that it possessed lawful authority to collect payments, repossess Plaintiff's vehicle, sell the collateral, assess a deficiency balance, and report adverse credit

information as a creditor or lawful servicer. Plaintiff disputes USAA's asserted authority on multiple, independent grounds, including but not limited to: (a) the effect of Plaintiff's timely notices of rescission under TILA; (b) USAA's failure to cancel the security interest and return property as required by statute; (c) unresolved billing-error disputes and failure to provide a lawful accounting; (d) conflicting representations regarding ownership and enforcement authority; and (e) publicly available SEC disclosures and UCC financing statements indicating transfer, securitization, or collateralization of retail installment contracts and related payment streams. Despite these disputes, USAA proceeded with repossession, sale of the vehicle, post-sale deficiency assertions, and continued credit reporting, thereby maintaining an ongoing adverse legal position against Plaintiff. The parties' competing positions create a concrete controversy concerning whether: (a) USAA possessed standing to enforce the alleged obligation; (b) the security interest was lawfully enforceable after receipt of rescission notices; (c) USAA was required to cease enforcement during unresolved billing disputes; (d) the asserted deficiency balance is valid or enforceable; and (e) USAA's continued reporting and collection activity is lawful.

### Necessity of Declaratory Relief

Absent declaratory relief, Plaintiff remains subject to continued enforcement threats, adverse credit reporting, and uncertainty regarding rights and obligations arising from the transaction. Monetary damages alone are inadequate to resolve these disputes because they do not clarify ownership, standing, the status of the security interest, or the legality of USAA's ongoing conduct. Declaratory relief will resolve uncertainty, prevent future violations, and guide the parties' conduct going forward.

### Requested Declarations

Plaintiff seeks judicial declarations that: (a) USAA lacked lawful authority to repossess and sell the vehicle at the time such actions were taken; (b) Plaintiff's notices of rescission rendered continued enforcement unlawful absent statutory compliance; (c) the security interest was required to be canceled upon receipt of rescission; (d) USAA was required to cease enforcement during unresolved billing-error disputes; (e) any asserted deficiency balance is disputed, unverified, and unenforceable as asserted; and (f) USAA's continued credit reporting without verification violates governing law.

21

***Rule 8 / Rule 12(b)(6) Preservation***

Plaintiff has alleged facts establishing an actual controversy of sufficient immediacy and reality to warrant declaratory relief. Accepting these allegations as true, declaratory relief will materially advance resolution of the dispute and prevent continued harm. Dismissal at the pleading stage would improperly deny Plaintiff a judicial determination of core legal rights and obligations.

## IX. CONTRACT / PROPERTY / AUTHORITY COUNTS

### COUNT V – Breach of Contract

***Conclusion (Claim Statement)***

Defendant USAA Federal Savings Bank ("USAA") materially breached the Retail Installment Sales Contract and related refinance agreement (collectively, the "Contract") by enforcing remedies inconsistent with the Contract's express terms, by failing to satisfy conditions precedent to enforcement, and by acting in a manner that deprived Plaintiff of the benefit of the bargain.

***Rule (Governing Law and Contractual Duties)***

Under North Carolina law, a valid contract imposes binding obligations on the parties according to its express terms and incorporated duties. A party's failure to perform a material term or condition constitutes a breach giving rise to damages and appropriate relief. Conditions precedent to enforcement must be satisfied before a party may exercise contractual remedies, including repossession, sale of collateral, or assessment of a deficiency balance. Enforcement taken without satisfaction of conditions precedent is unauthorized and constitutes a material breach. Contractual remedies must be exercised in accordance with the agreement's terms, applicable law, and incorporated statutory duties. A party may not enforce a contract in a manner inconsistent with its express limitations or while material disputes remain unresolved.

***Application (USAA's Breach)***

Plaintiff entered into the Contract with USAA on or about July 7, 2021, in connection with a consumer automobile refinance transaction involving a 2016 Dodge Durango, VIN 1C4RDJEG7GC331593. The Contract governed the parties' respective rights and obligations, including conditions for enforcement and remedies. The Contract incorporated express and

22

implied requirements that USAA: (a) accurately account for amounts owed; (b) provide required notices and disclosures; (c) refrain from enforcement during unresolved disputes; (d) comply with applicable law governing rescission, billing errors, and arbitration; and (e) exercise remedies only upon lawful authority and compliance with contractual prerequisites. Plaintiff timely invoked contractual and statutory dispute-resolution mechanisms, including billing-error notices, rescission notices, and election of arbitration, all of which imposed limitations on USAA's ability to enforce the Contract pending resolution.

USAA materially breached the Contract by proceeding with enforcement, including repossession, sale of the vehicle, and assertion of a deficiency balance, without first satisfying conditions precedent, without providing a lawful accounting, and while material disputes remained unresolved. USAA further breached the Contract by acting inconsistently with its terms when it: (a) enforced remedies after receipt of rescission notices requiring cancellation of the security interest; (b) ignored Plaintiff's election of arbitration while proceeding unilaterally; (c) asserted balances and deficiencies without substantiating entitlement under the Contract; and (d) treated disputed amounts as final despite ongoing objections and requests for validation. USAA's conduct deprived Plaintiff of the benefit of the bargain by converting a contract governed by defined procedures and protections into a unilateral enforcement mechanism, contrary to the Contract's express structure and limitations.

### *Causation (Resulting Harm)*

As a direct and proximate result of USAA's breaches, Plaintiff suffered damages including but not limited to: loss of use and ownership of the vehicle, financial loss, asserted deficiency balances, credit damage, emotional distress, and costs incurred attempting to enforce contractual rights. These damages were foreseeable at the time of contracting and flowed directly from USAA's failure to adhere to the Contract's enforcement conditions and dispute-resolution requirements.

### *Remedies and Preservation*

USAA's material breaches excuse any further performance by Plaintiff, render USAA's enforcement actions unauthorized, and entitle Plaintiff to damages, restitution, and appropriate equitable relief. Plaintiff has alleged facts sufficient to establish the existence of a valid contract, USAA's material breaches, causation, and resulting damages. Accepting these allegations as true, Plaintiff has stated a plausible claim for breach of contract.

Discovery is required to determine the full scope of USAA's nonperformance, enforcement decisions, and internal records governing its contractual authority. Dismissal at the pleading stage would improperly resolve disputed factual issues.

### COUNT VI – Breach of the Implied Covenant of Good Faith and Fair Dealing

#### *Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") breached the implied covenant of good faith and fair dealing inherent in the Retail Installment Sales Contract and refinance agreement by abusing contractual discretion, engaging in opportunistic enforcement, concealing material facts, and exercising contractual rights in a manner designed to deprive Plaintiff of the benefits reasonably expected under the agreement.

#### *Rule (Governing Law and Duties)*

Every contract governed by North Carolina law contains an implied covenant of good faith and fair dealing, which requires that neither party do anything that injures the right of the other to receive the benefits of the agreement. *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299 (1985). The implied covenant prohibits the abuse of discretion granted under a contract and bars a party from exercising contractual rights in bad faith, for an improper purpose, or in a manner inconsistent with the reasonable expectations of the parties. *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56–57, 607 S.E.2d 286 (2005). While the implied covenant cannot override express contractual terms, it applies where one party retains discretion over performance or enforcement and exercises that discretion in a manner that frustrates the contract's purpose. *Suntrust Bank v. Bryant/Sutphin Props., LLC*, 222 N.C. App. 821, 828–29, 733 S.E.2d 205 (2012). Federal courts applying North Carolina law have recognized that bad-faith enforcement conduct, concealment of material facts, and opportunistic use of contractual remedies can give rise to an independent claim for breach of the implied covenant even where the underlying contract terms are not disputed. *WakeMed v. Surgical Care Affiliates, LLC*, 2018 WL 3635027, at *6 (E.D.N.C. July 31, 2018).

#### *Application (USAA's Bad-Faith Conduct)*

The Contract vested USAA with discretion over enforcement decisions, including when to declare default, whether to proceed with repossession, how to account for payments and proceeds, and how to respond to disputes, rescission notices, and arbitration elections.

24

Plaintiff reasonably expected that USAA would exercise this discretion honestly, transparently, and in good faith, consistent with the Contract's structure, incorporated statutory protections, and dispute-resolution mechanisms. USAA breached the implied covenant by abusing its discretion and engaging in bad-faith conduct, including but not limited to: (a) enforcing remedies while material disputes and billing errors remained unresolved; (b) proceeding with repossession and sale after receipt of rescission notices requiring cancellation of the security interest; (c) ignoring Plaintiff's election of arbitration while continuing unilateral enforcement; (d) asserting authority and balances without providing a lawful accounting; and (e) concealing or failing to disclose material facts regarding transfers, securitization, and collateralization affecting enforcement authority. USAA's conduct was opportunistic and calculated to maximize recovery at Plaintiff's expense while depriving Plaintiff of the procedural and substantive protections promised by the Contract. Rather than honoring the Contract's purpose as a structured, conditional credit agreement, USAA weaponized its position of control and superior access to information to force enforcement outcomes without transparency or accountability.

### Causation (Resulting Harm)

As a direct and proximate result of USAA's breach of the implied covenant, Plaintiff suffered damages including loss of the vehicle, financial loss, damage to credit reputation, emotional distress, and costs incurred attempting to enforce contractual rights in the face of bad-faith conduct. These harms were foreseeable and flowed directly from USAA's abuse of discretion and concealment of material facts governing enforcement authority.

### Independence From Breach of Contract

This claim is pled in the alternative and is independent of Plaintiff's breach of contract claim. Even if the Court determines that USAA technically complied with certain express contractual provisions, its conduct nevertheless violated the implied covenant by frustrating Plaintiff's reasonable expectations and depriving Plaintiff of the benefits of the agreement.

### Rule 8 / Rule 12(b)(6) Preservation

Plaintiff has alleged facts establishing the existence of a valid contract, USAA's discretionary authority, bad-faith exercise of that discretion, causation, and damages. Accepting these allegations as true, Plaintiff has stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Resolution of USAA's intent, discretion, and

internal decision-making requires discovery into matters exclusively within USAA's possession and control.

## IX. CONTRACT / PROPERTY / AUTHORITY COUNTS

### COUNT VII – Conversion

*Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") committed conversion by exercising unauthorized dominion and control over Plaintiff's property, including (a) Plaintiff's motor vehicle, (b) a collateralized negotiable instrument tendered by Plaintiff, and (c) Plaintiff's contractual and property rights arising under the Retail Installment Sales Contract ("RISC"), in a manner inconsistent with Plaintiff's superior ownership and possessory rights.

*Rule (Governing Law – Conversion)*

Under North Carolina law, conversion is the unauthorized assumption and exercise of the right of ownership over the personal property of another, to the exclusion of the owner's rights. *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 551 S.E.2d 546 (2001). Conversion applies to tangible property, negotiable instruments, and identifiable intangible property rights reduced to a document or chattel paper, including rights embodied in contracts and instruments. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 723 S.E.2d 744 (2012). A party commits conversion where it takes, retains, disposes of, or exercises control over property without lawful authority, even where the party initially obtained possession lawfully but later exceeded its authority. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 603 S.E.2d 147 (2004).

*Application – Converted Property Interests*

Plaintiff owned and possessed lawful rights in the following distinct property interests: (a) The Vehicle: a 2016 Dodge Durango, VIN 1C4RDJEG7GC331593; (b) A Negotiable Instrument tendered by Plaintiff as a collateralized promissory note; and (c) Plaintiff's contractual and property rights under the RISC, including rights to possession, discharge, and lawful accounting. USAA exercised dominion and control over each of these property interests without lawful authority.

26

### Conversion of the Vehicle

USAA repossessed and sold Plaintiff's vehicle while statutory and contractual bars to enforcement were in effect, including unresolved billing-error disputes, rescission notices, and an election of arbitration. At the time of repossession and sale, USAA lacked lawful authority to enforce the alleged security interest, rendering the taking and disposition of the vehicle unauthorized and wrongful. USAA's repossession and sale of the vehicle therefore constituted conversion.

### Conversion of the Negotiable Instrument (Legal Clarification)

On August 3, 2023, Plaintiff tendered to USAA a collateralized promissory note/negotiable instrument in the amount of $29,167.56, together with written instructions. USAA accepted receipt and failed to lawfully reject, dishonor, or return the instrument. Negotiable instruments are not "theories," abstractions, or creative devices. They are recognized by statute and controlling precedent as lawful monetary instruments and cash equivalents. The United States Supreme Court has repeatedly held that promissory notes and negotiable instruments function as money or its equivalent, including: *Shaw v. Railroad Co.*, 101 U.S. 557 (1880) (negotiable instruments circulate as representatives of money); *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 437–38 (1986) (Congress has determined that promissory notes generally constitute money or its equivalent); *Swift v. Tyson*, 41 U.S. (16 Pet.) 1 (1842) (negotiable securities are equivalent to cash); *Perry v. United States*, 294 U.S. 330 (1935) (obligations function as lawful monetary instruments).

Under UCC § 3-104, a promissory note is an unconditional promise to pay a fixed amount of money. Under UCC § 3-603(b), tender of payment by negotiable instrument discharges the obligation to the extent of the tender if the instrument is not properly dishonored. Federal banking law likewise recognizes promissory notes as monetary equivalents. 12 U.S.C. § 1813(l)(1) defines "deposit" to include money *or its equivalent*, including the proceeds of promissory notes. Accordingly, any attempt to dismiss Plaintiff's tender as "vapor money," "creative writing," or a nullity is contrary to Supreme Court precedent, the Uniform Commercial Code, and federal banking law, and constitutes an improper conclusory label rather than a legal argument. USAA's failure to properly dishonor, return, credit, or account for the tendered negotiable instrument, followed by continued enforcement and retention of benefits, constitutes conversion of the instrument and its value.

*Conversion of Rights Under the RISC*

Plaintiff possessed enforceable property rights under the RISC, including the right to lawful enforcement procedures, accounting, and discharge upon valid tender. USAA converted these rights by ignoring the tender, proceeding with enforcement without authority, retaining proceeds, and asserting deficiencies without lawful entitlement.

*Causation and Damages*

As a direct and proximate result of USAA's conversion, Plaintiff suffered loss of property, loss of use, financial harm, damage to credit, emotional distress, and deprivation of statutory and contractual rights. USAA's conduct was knowing, intentional, or in reckless disregard of Plaintiff's rights.

*Rule 8 / Rule 12(b)(6) Preservation*

Plaintiff has alleged ownership, wrongful dominion, lack of lawful authority, and resulting damages with respect to each converted property interest. These allegations state a plausible claim for conversion. Any dismissal premised on labeling negotiable-instrument law as "theory" would constitute legal error and improper fact-finding at the pleading stage.

## COUNT VIII – Wrongful Repossession
### (Civil Theft / Unauthorized Taking of Property)

*Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") committed wrongful repossession by taking and disposing of Plaintiff's motor vehicle without lawful authority, during an active statutory dispute, rescission period, and arbitration election, and in the absence of a valid, enforceable security interest or right of possession.

*Rule (Governing Law and Duties)*

Under North Carolina law, a creditor may repossess collateral only where it possesses a valid and enforceable security interest and exercises self-help without breach of the peace and without violating governing law. *N.C.G.S. § 25-9-609*. A repossession is wrongful where the alleged creditor lacks lawful authority to enforce the security interest, proceeds despite statutory bars to enforcement, or ignores contractual conditions precedent. *Gillespie v. N.C. Nat'l Bank*, 95 N.C. App. 477, 383 S.E.2d 93 (1989). Courts recognize that taking property under color of right, where no lawful right exists, constitutes a civil wrong analogous to

28

larceny by trick or conversion, even where criminal liability is not alleged. *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 551 S.E.2d 546 (2001). Federal consumer-protection statutes further prohibit repossession or enforcement activity during active billing-error disputes, rescission periods, or where contractual arbitration has been invoked. *15 U.S.C. § 1666*; *12 C.F.R. § 1026.13*; *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015).

### *Application (USAA's Conduct)*

Plaintiff's vehicle, a 2016 Dodge Durango, VIN 1C4RDJEG7GC331593, was subject to a consumer auto refinance agreement entered into on or about July 7, 2021. Beginning no later than August 2023, Plaintiff placed the account into formal dispute by issuing written billing-error notices, demands for validation and accounting, and multiple notices of rescission. Plaintiff further invoked the contractual arbitration provision prior to repossession. These actions triggered statutory and contractual bars to enforcement, requiring USAA to cease collection and repossession activity until the disputes and rescission were lawfully resolved. Despite these bars, and without substantiating lawful authority to enforce the alleged obligation or security interest, USAA repossessed Plaintiff's vehicle on March 20, 2024.

At the time of repossession, USAA had not: (a) resolved the billing-error dispute; (b) complied with rescission obligations, including cancellation of the security interest; (c) honored Plaintiff's arbitration election; or (d) established lawful standing or authority to repossess. USAA's repossession therefore constituted an unauthorized taking of Plaintiff's property, executed under the appearance of authority that did not lawfully exist. USAA compounded this wrongful taking by selling the vehicle and asserting a deficiency balance, despite the absence of lawful enforcement authority and without providing a verified accounting.

### *Causation (Resulting Harm)*

As a direct and proximate result of USAA's wrongful repossession, Plaintiff suffered: (a) loss of possession and ownership of the vehicle; (b) loss of transportation and related consequential damages; (c) financial loss associated with the vehicle's sale; (d) emotional distress and hardship; and (e) adverse credit reporting and asserted deficiency liability. These harms were the foreseeable result of repossessing property without lawful authority.

### *Damages and Equitable Relief*

Plaintiff is entitled to actual damages, consequential damages, restitution of proceeds, and equitable relief, including declarations regarding the unlawfulness of the repossession and sale. USAA's conduct was willful, reckless, and in disregard of Plaintiff's statutory and contractual rights, warranting enhanced remedies where permitted by law.

### *Rule 8 / Rule 12(b)(6) Preservation*

Plaintiff has plausibly alleged ownership, lack of lawful authority, unauthorized taking, and resulting damages. Resolution of whether USAA possessed lawful authority to repossess requires factual development concerning standing, compliance with rescission obligations, dispute handling, and internal enforcement policies; matters exclusively within USAA's possession. Accordingly, this Count is not subject to dismissal at the pleading stage and must proceed to discovery.

## COUNT IX – Unfair and Deceptive Trade Practices
## N.C. Gen. Stat. § 75-1.1 et seq.

### *Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") engaged in unfair and deceptive acts and practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1 by misrepresenting its authority, concealing material facts, enforcing an alleged obligation without lawful standing, wrongfully repossessing Plaintiff's vehicle, mishandling disputes and rescission notices, and engaging in deceptive credit-reporting and post-sale deficiency practices.

### *Rule (Governing Law and Elements)*

To state a claim under N.C.G.S. § 75-1.1, a plaintiff must allege: (a) an unfair or deceptive act or practice; (b) in or affecting commerce; and (c) which proximately caused actual injury. *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 653 S.E.2d 393 (2007). An act is unfair if it offends established public policy or is immoral, unethical, oppressive, or substantially injurious to consumers, and deceptive if it has the tendency or capacity to mislead. *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981). Misrepresentations regarding creditor identity, authority to enforce, loan status, repossession rights, and handling of consumer disputes constitute unfair and deceptive practices as a matter of law. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676 (2000). Conduct violating

federal consumer-protection statutes, including TILA, FDCPA, and FCRA, may independently support a § 75-1.1 claim. *Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991).

### *Application (USAA's Unfair and Deceptive Conduct)*

USAA engaged in a course of conduct that was unfair and deceptive, including but not limited to: (a) Misrepresenting creditor status and enforcement authority, while failing to substantiate ownership, standing, or compliance with contractual and statutory prerequisites; (b) Concealing material facts regarding securitization, collateral pledges, and third-party interests reflected in SEC disclosures and UCC financing statements, while simultaneously holding itself out as the sole entity entitled to enforce; (c) Continuing collection, credit reporting, repossession, and sale activity during unresolved billing-error disputes, rescission periods, and after Plaintiff invoked arbitration; (d) Wrongfully repossessing and selling Plaintiff's vehicle without lawful authority and asserting a post-sale deficiency without a verified accounting; (e) Issuing contradictory account representations, including charge-off reporting, asserted balances, and unexplained payments, without issuing required tax reporting or lawful reconciliation; (f) Stonewalling regulatory complaints, including CFPB submissions, by providing generic responses that failed to address the substance of Plaintiff's disputes; (g) Retaining proceeds and benefits derived from Plaintiff's property and payment stream without lawful entitlement. These acts were not isolated or accidental. They reflect systemic practices designed to enforce alleged obligations without transparency, accountability, or compliance with governing law.

### *Commerce Requirement*

USAA's conduct occurred in or affecting commerce, as it arose from consumer automobile financing, servicing, collection, repossession, sale, and credit reporting; activities squarely within the scope of § 75-1.1.

### *Causation and Injury*

USAA's unfair and deceptive acts proximately caused Plaintiff to suffer actual injury, including: (a) loss of Plaintiff's vehicle and related property rights; (b) financial loss and asserted deficiency liability; (c) damage to credit reputation; (d) emotional distress and hardship; and (e) out-of-pocket costs incurred attempting to stop unlawful conduct. These

injuries were the foreseeable and direct result of USAA's deceptive representations and unfair enforcement practices.

### Treble Damages and Legal Fees

Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble damages for injuries caused by USAA's violations. USAA's conduct was willful, knowing, and in bad faith, entitling Plaintiff to legal fees and costs under N.C.G.S. § 75-16.1, should such fees be incurred.

### Rule 8 / Rule 12(b)(6) Preservation

Plaintiff has plausibly alleged unfair and deceptive conduct, commerce nexus, and proximate causation of actual injury. Determining the scope of USAA's authority, disclosures, internal policies, and handling of disputes requires discovery of information solely within USAA's possession. Dismissal at the pleading stage would improperly resolve factual disputes and is therefore unwarranted.

## COUNT X – Unjust Enrichment / Restitution

### Conclusion (Claim Statement)

Defendant USAA Federal Savings Bank ("USAA") was unjustly enriched by retaining payments, proceeds, and benefits derived from Plaintiff's property and payment stream without lawful entitlement, and equity requires restitution of those benefits to prevent injustice.

### Rule (Governing Law and Equitable Principles)

Under North Carolina law, unjust enrichment occurs where one party confers a benefit on another, the benefit is not conferred gratuitously, the benefit is measurable, and the defendant's retention of the benefit would be inequitable. *Booe v. Shadrick*, 322 N.C. 567, 369 S.E.2d 554 (1988). Unjust enrichment is an equitable remedy designed to prevent one party from profiting at another's expense where no valid or enforceable contract governs the parties' relationship, or where enforcement under a purported contract would be unjust due to misconduct, failure of consideration, or lack of authority. *Whitfield v. Gilchrist*, 348 N.C. 39, 497 S.E.2d 412 (1998). A claim for unjust enrichment may be pled in the alternative to contract-based claims, particularly where the defendant disputes the validity, enforceability, or authority underlying the alleged agreement. *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999).

32

### Application (Benefits Retained by USAA)

Plaintiff conferred measurable benefits upon USAA, including but not limited to: (a) payments made pursuant to the refinance agreement; (b) the tender of a collateralized negotiable instrument; (c) the vehicle itself, which was repossessed and sold; (d) the economic value of Plaintiff's payment stream and credit profile; (e) the charge-off treatment of the alleged payment balance, which provided USAA with accounting, regulatory, and financial benefits; and (f) any credit enhancement, insurance proceeds, guarantees, loss-sharing arrangements, reserve credits, or third-party recoveries associated with the alleged obligation. These benefits were conferred with the expectation that USAA possessed lawful authority to enforce the obligation, comply with governing law, and act in good faith. As set forth in preceding counts, USAA failed to establish lawful standing, failed to comply with statutory and contractual prerequisites, ignored rescission and dispute obligations, and proceeded with enforcement without authority. Despite lacking lawful entitlement, USAA retained: (a) proceeds from the sale of Plaintiff's vehicle; (b) payments previously made by Plaintiff; (c) asserted deficiency balances; and (d) ancillary benefits derived from securitization, collateral pledging, or monetization of Plaintiff's alleged obligation. USAA's retention of these benefits under the circumstances is inequitable and unjust.

### Failure of Consideration / Authority

To the extent USAA contends that a contract governs the relationship, Plaintiff alleges that enforcement failed due to lack of consideration, failure of conditions precedent, rescission, and lack of lawful authority. Equity does not permit a party to retain benefits derived from an agreement it was not lawfully entitled to enforce or from enforcement conduct that violated statutory and contractual restraints.

### Causation and Injury

As a direct and proximate result of USAA's unjust enrichment, Plaintiff suffered financial loss, deprivation of property, and loss of lawful benefits associated with the vehicle and payment stream.

### Equitable Relief Requested

Plaintiff seeks restitution, disgorgement, and equitable accounting of all payments, proceeds, credits, offsets, and benefits retained by USAA in connection with Plaintiff's

account. Plaintiff further seeks the imposition of a constructive trust or other equitable remedy to prevent continued unjust enrichment.

***Rule 8 / Rule 12(b)(6) Preservation***

Plaintiff has plausibly alleged the conferral of benefits, USAA's retention of those benefits without lawful entitlement, and inequity resulting therefrom. The extent and disposition of benefits retained by USAA are matters exclusively within USAA's possession and control, rendering dismissal at the pleading stage inappropriate and necessitating discovery.

**COUNT XI – Violation of UCC Articles 8 and 9**

(Improper Transfer, Pledge, and Enforcement of Financial Assets)

***Conclusion (Claim Statement)***

Defendant USAA Federal Savings Bank ("USAA") violated Articles 8 and 9 of the Uniform Commercial Code, as adopted in North Carolina, by transferring, pledging, encumbering, and enforcing financial assets and collateral interests associated with Plaintiff's Credit Application, Retail Installment Sales Contract ("RISC"), and payment stream without establishing lawful entitlement, priority, or authority to enforce those assets.

***Rule (Governing Commercial Law)***

**UCC Article 9** governs the creation, attachment, perfection, priority, and enforcement of security interests in personal property, including instruments, chattel paper, payment intangibles, and proceeds. *N.C.G.S. § 25-9-109.* Once a debtor grants a security interest in such collateral, the debtor's ability to enforce or dispose of the collateral is subject to the rights of the secured party and must comply strictly with Article 9's enforcement provisions. *N.C.G.S. §§ 25-9-601–625.* **UCC Article 8** governs the rights and entitlements associated with financial assets held directly or indirectly through intermediaries, including assets transferred into securitization trusts or similar structures. *N.C.G.S. § 25-8-102(a)(9), (17).* Where enforcement authority depends on entitlement through a chain of transfers, the enforcing party bears the burden of proving its status as the person entitled to enforce and its compliance with governing commercial law. *Carpenter v. Longan,* 83 U.S. (16 Wall.) 271 (1872); *In re Veal,* 450 B.R. 897, 912–21 (9th Cir. BAP 2011).

34

### *Application (USAA's Commercial-Law Violations)*

The Credit Application, RISC, and associated payment stream constitute financial assets, payment intangibles, and/or chattel paper within the meaning of UCC Articles 8 and 9. Publicly filed SEC disclosures establish that retail installment contracts and payment streams were transferred into securitization structures, including USAA Auto Direct Trust 2019-1, while UCC financing statements identify USAA Federal Savings Bank as a debtor and the Federal Home Loan Bank of Dallas as a secured party holding a blanket security interest in instruments, chattel paper, and proceeds. These transactions severed or encumbered enforcement rights and subjected the assets to third-party interests governed by Articles 8 and 9. Despite these encumbrances and transfers, USAA asserted unilateral enforcement authority against Plaintiff, repossessed collateral, and claimed deficiency balances without demonstrating entitlement, priority, or authority under Articles 8 or 9. USAA failed to establish: (a) lawful entitlement to enforce the financial asset; (b) compliance with secured-party priority rules; (c) authority to repossess collateral subject to third-party security interests; or (d) compliance with Article 9 enforcement requirements.

### *Causation and Harm*

As a direct and proximate result of these violations, Plaintiff suffered loss of property, improper repossession, financial harm, and deprivation of statutory protections governing secured transactions and financial assets.

### *Rule 8 / Rule 12(b)(6) Preservation*

Plaintiff has plausibly alleged the existence of governed collateral, transfers and pledges, lack of enforcement authority, and resulting harm. These matters require discovery into securitization records, UCC collateral treatment, and entitlement chains solely within USAA's possession.

### COUNT XII – Unauthorized Agency / Abuse of Power of Attorney
#### *(Lack of Authority; Acts Ultra Vires)*

### *Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") engaged in unauthorized agency and abuse of purported power of attorney by taking enforcement, repossession, disposition, and reporting actions without valid authority, after revocation of any agency relationship,

and without establishing lawful authorization from the true party in interest, in violation of statutory, contractual, and common-law duties.

### Rule (Governing Law and Duties)

Under North Carolina law, an agent may act only within the scope of authority granted by the principal, and actions taken without authority or after authority has been revoked, are void and unenforceable as to the principal and third parties. *Zimmerman v. Hogg & Allen, Prof'l Ass'n*, 286 N.C. 24, 209 S.E.2d 795 (1974). A power of attorney is strictly construed, is revocable, and does not survive revocation or acts taken beyond its express scope. *In re Estate of Graham*, 295 N.C. 414, 245 S.E.2d 731 (1978). An entity asserting servicing or enforcement authority bears the burden of establishing the existence, scope, and continuing validity of the agency relationship. Actions taken absent proof of authority constitutes ultra vires conduct and are not protected by contractual or statutory enforcement provisions. *In re Veal*, 450 B.R. 897, 920–21 (9th Cir. BAP 2011). Where multiple entities are involved in origination, securitization, servicing, trusteeship, or repossession, each entity must independently establish authority to act. Unsupported assertions by counsel or servicers do not substitute for proof. *Carpenter v. Longan*, 83 U.S. (16 Wall.) 271 (1872).

### Application (USAA's Unauthorized Acts)

USAA asserted authority to service, collect, repossess, sell, and report on Plaintiff's account based on purported contractual and agency relationships. Plaintiff expressly revoked any power of attorney or agency authority previously granted to USAA on or about March 29, 2024, by notarized written revocation served on USAA. Despite receipt of the revocation, USAA continued to exercise dominion and control over Plaintiff's property and rights, including retention and disposition of the vehicle, assertion of deficiency balances, and adverse credit reporting. USAA failed to produce any valid, operative power of attorney, servicing agreement, trust authorization, or other written instrument establishing continuing authority after revocation or during the period of disputed standing. To the extent USAA acted purportedly on behalf of any trust, depositor, trustee, insurer, or third party, USAA failed to demonstrate that (a) such entity was the lawful holder or beneficiary of the obligation; (b) USAA was duly authorized to act on its behalf; or (c) such authority survived rescission, dispute, and revocation. USAA's actions therefore constituted unauthorized agency, abuse of purported authority, and ultra vires conduct.

36

### Causation (Resulting Harm)

As a direct and proximate result of USAA's unauthorized acts, Plaintiff suffered: (a) loss of property and possessory rights; (b) financial loss and asserted liabilities; (c) impairment of credit standing; (d) emotional distress; and (e) deprivation of statutory and contractual protections.

### Equitable and Legal Relief

Plaintiff is entitled to declaratory relief establishing that USAA lacked authority to act, that its actions were void, and that any enforcement, disposition, or reporting taken without authority is unlawful. Plaintiff further seeks restitution, disgorgement, and all other relief necessary to restore Plaintiff to the position occupied prior to USAA's unauthorized acts.

### Rule 8 / Rule 12(b)(6) Preservation

Plaintiff has plausibly alleged revocation of authority, lack of proof of agency, ultra vires conduct, and resulting harm. The existence, scope, and use of any power of attorney, servicing agreement, or agency relationship are facts uniquely within USAA's possession. Resolution of these issues requires discovery, rendering dismissal at the pleading stage improper.

## COUNT XIII – Fraud in the Inducement
### *(Intentional Misrepresentation and Material Omission)*

### Conclusion (Claim Statement)

Defendant USAA Federal Savings Bank ("USAA") committed fraud in the inducement by knowingly misrepresenting and concealing material facts at the time Plaintiff entered into the automobile refinance transaction, including the identity of the true creditor, the nature of USAA's enforcement authority, and the intended securitization and collateralization of the transaction, upon which Plaintiff reasonably relied to his detriment.

### Rule (Governing Law – Rule 9(b) Standard)

Under North Carolina law, fraud in the inducement requires: (a) a false representation or concealment of a material fact; (b) reasonably calculated to deceive; (c) made with intent to deceive (scienter); (d) which does in fact deceive; and (e) results in damage to the injured party. *Forbis v. Neal*, 361 N.C. 519, 649 S.E.2d 382 (2007). Fraud may

be based on material omissions where a party has a duty to disclose, including where the facts are peculiarly within the defendant's knowledge and not reasonably discoverable by the plaintiff. *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974). Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be pled with particularity, including the who, what, when, where, and how of the misconduct, but permits intent and knowledge to be pled generally.

### Particularized Allegations (Who / What / When / Where / How)

**Who**: USAA Federal Savings Bank, acting through its officers, agents, and standardized refinance documentation. **When**: On or about July 7, 2021, at the time Plaintiff entered into the automobile refinance agreement for a 2016 Dodge Durango, VIN 1C4RDJEG7GC331593. **Where**: In connection with the origination and closing of the refinance transaction presented to Plaintiff. **What (Misrepresentations and Omissions)**: USAA represented, expressly and by implication, that: (a) USAA was the true creditor entitled to enforce the obligation; (b) the transaction would be enforced solely by USAA in accordance with the contract terms; (c) USAA possessed lawful authority to repossess and assert deficiencies upon default; and (d) no undisclosed third-party interests materially affected Plaintiff's rights. **How:** USAA omitted and concealed material facts, including: (a) that the Credit Application, RISC, and/or associated payment stream could be monetized, transferred, pledged, or encumbered through securitization structures, trusts, or collateral arrangements; (b) that third parties could obtain beneficial, ownership, or security interests inconsistent with USAA's asserted unilateral enforcement authority; (c) that such arrangements could materially affect the identity of the true creditor and who held the right to enforce, collect, or repossess; (d) that enforcement authority could be conditioned on compliance with undisclosed internal, trust, or third-party requirements; and (e) that proceeds, credits, or recoveries derived from monetization, collateralization, or third-party enhancements could offset or extinguish the alleged obligation without disclosure to Plaintiff.

### Duty to Disclose

USAA had a duty to disclose these facts because: (a) USAA possessed superior and exclusive knowledge of its securitization, collateral pledging, and enforcement practices; (b) the information was not reasonably discoverable by Plaintiff at the time of contracting; and (c) the concealed facts went to the heart of the transaction, including who could take Plaintiff's property upon default.

### Intent and Deception

USAA made the foregoing representations and omissions with intent to induce Plaintiff to enter into the refinance agreement and to rely on USAA's apparent authority and representations. Plaintiff reasonably relied on USAA's representations and omissions in agreeing to the refinance transaction, executing the RISC, and granting a security interest in the vehicle.

### Causation and Damages

As a direct and proximate result of USAA's fraudulent inducement, Plaintiff suffered damages including: (a) loss of the vehicle through repossession and sale; (b) financial loss and asserted deficiency balances; (c) damage to credit reputation; (d) loss of statutory and contractual protections; and (e) emotional distress and hardship. Plaintiff would not have entered into the refinance transaction, or would have done so on materially different terms, had USAA disclosed the true facts.

### Equitable Remedies and Rescission

Fraud in the inducement renders the contract voidable and supports rescission, restitution, and equitable relief restoring Plaintiff to the position occupied prior to the fraudulent conduct. Plaintiff seeks rescission to the extent not already affected, restitution of all benefits wrongfully retained, and all other equitable relief necessary to prevent USAA from profiting from its fraud.

### Rule 8 / Rule 12(b)(6) Preservation

Plaintiff has pled fraud with particularity under Rule 9(b), identifying the specific misrepresentations, omissions, timing, actors, reliance, and resulting harm. The concealed facts concerning securitization, collateral pledging, internal authority, and enforcement practices are uniquely within USAA's possession, necessitating discovery. Dismissal at the pleading stage would be improper.

39

## COUNT XIV – Negligent Misrepresentation

(Alternative to Fraud in the Inducement)

### *Conclusion (Claim Statement)*

Defendant USAA Federal Savings Bank ("USAA") negligently misrepresented and negligently omitted material facts in connection with the automobile refinance transaction, upon which Plaintiff reasonably relied, resulting in foreseeable and compensable harm.

### *Rule (Governing Law – Negligent Misrepresentation)*

Under North Carolina law, negligent misrepresentation occurs where: (a) a party supplies false information or omits material information; (b) without exercising reasonable care in obtaining or communicating the information; (c) in the course of a business or transaction in which the party has a pecuniary interest; (d) the information is justifiably relied upon; and (e) the reliance results in pecuniary loss. Unlike fraud, negligent misrepresentation does not require proof of intent to deceive. Liability arises where a defendant fails to exercise reasonable care to ensure the accuracy and completeness of information supplied to a consumer. A duty to disclose exists where material facts are peculiarly within the defendant's knowledge, where partial disclosures would be misleading, absent full disclosure, or where the defendant undertakes to speak and must speak truthfully and completely.

### *Application (USAA's Negligent Conduct)*

In connection with the refinance transaction entered into on or about July 7, 2021, USAA supplied Plaintiff with information and standardized documentation concerning the identity of the creditor, the nature of the obligation, enforcement authority, and remedies upon default. USAA negligently failed to exercise reasonable care by: (a) failing to disclose that the Credit Application, RISC, and/or payment stream could be monetized, transferred, pledged, or encumbered through securitization or collateral arrangements; (b) failing to disclose that third parties could hold beneficial or security interests affecting enforcement authority; (c) failing to clearly identify the true creditor or all parties with a material interest in the obligation; (d) failing to disclose that enforcement authority could be contingent on compliance with internal, trust, or third-party requirements; and (e) supplying partial representations that created a misleading impression of unilateral authority. These

40

omissions and representations were made in the ordinary course of USAA's business, in transactions in which USAA had a direct pecuniary interest.

### Justifiable Reliance

Plaintiff justifiably relied on USAA's representations and omissions in entering into the refinance agreement, executing the RISC, granting a security interest, and continuing performance under the belief that USAA possessed lawful and exclusive authority to enforce the obligation. Plaintiff's reliance was reasonable because the omitted facts were not publicly disclosed at origination, were within USAA's exclusive knowledge, and concerned matters that a consumer borrower would not reasonably be expected to independently discover.

### Causation and Damages

As a direct and proximate result of USAA's negligent misrepresentations and omissions, Plaintiff suffered damages including: (a) loss of the vehicle and related property rights; (b) financial loss and asserted deficiency balances; (c) impairment of credit reputation; (d) loss of statutory and contractual protections; and (e) consequential economic and emotional harm.

### Alternative Pleading and Equitable Relief

This Count is pled in the alternative to intentional fraud. To the extent USAA's conduct is found not to be intentional, it nevertheless constituted negligent misrepresentation warranting relief. Plaintiff seeks compensatory damages, equitable relief, restitution, and all other relief deemed just and proper.

### Rule 8 / Rule 12(b)(6) Preservation

Plaintiff has plausibly alleged the supply of inaccurate or incomplete information, failure to exercise reasonable care, justifiable reliance, and resulting damages. The full scope of USAA's disclosures, internal policies, and knowledge at origination are matters within USAA's possession, making dismissal at the pleading stage improper and necessitating discovery.

41

*(Agreement to Commit Unlawful Acts; Joint and Several Liability)*

### Conclusion (Claim Statement)

Defendant USAA Federal Savings Bank ("USAA") knowingly entered into and participated in a civil conspiracy with affiliated entities, agents, trustees, vendors, and other unknown co-conspirators to commit unlawful acts and to accomplish lawful acts by unlawful means, resulting in injury to Plaintiff.

### Rule (Governing Law – Civil Conspiracy)

Under North Carolina law, a civil conspiracy consists of: (a) an agreement between two or more persons; (b) to do an unlawful act or to do a lawful act in an unlawful way; (c) resulting in injury to the plaintiff. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 666 S.E.2d 107 (2008). Civil conspiracy is not an independent cause of action but derives from underlying unlawful acts. Where the underlying torts are sufficiently pled, conspiracy may be pled to impose joint and several liability on all participants. *Henderson v. LeBauer*, 101 N.C. App. 255, 399 S.E.2d 142 (1991). An agreement may be inferred from circumstantial evidence, including coordinated conduct, parallel actions, shared objectives, and mutual benefits. Direct evidence of an express agreement is not required at the pleading stage. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

### Underlying Unlawful Acts

The conspiracy alleged herein is predicated on the following underlying unlawful acts, each of which is pled elsewhere in this Complaint: (a) violations of the FDCPA, TILA, and FCRA; (b) conversion of Plaintiff's vehicle, negotiable instrument, and contractual rights; (c) wrongful repossession without lawful authority; (d) unfair and deceptive trade practices in violation of N.C.G.S. § 75-1.1; (e) unauthorized agency and abuse of power of attorney; and (f) fraudulent and negligent misrepresentations concerning creditor identity and enforcement authority.

### Application (Agreement and Overt Acts)

USAA acted in concert with one or more co-conspirators, including but not limited to affiliated entities, securitization participants, trustees, servicers, repossession agents, auction entities, insurers, credit furnishers, and third-party vendors. According to publicly filed SEC statements, USAA Federal Savings Bank served as Sponsor, Seller, and Servicer

42

in connection with the securitization of retail installment contracts transferred into USAA Auto Direct Trust 2019-1, while simultaneously holding itself out to Plaintiff as the sole creditor and enforcing party, despite those roles being materially distinct and subject to different legal capacities and authority. In addition, a Texas Secretary of State UCC Financing Statement (No. 01-093548, continued by Amendment No. 20-00605195) identifies USAA Federal Savings Bank as *Debtor* and Federal Home Loan Bank of Dallas as *Secured Party*, asserting a blanket security interest in "*all instruments (including promissory notes), chattel paper, payment intangibles, and proceeds*," thereby encumbering the same category of assets USAA later claimed to unilaterally enforce against Plaintiff. The conspirators shared a common objective to enforce an alleged obligation, repossess and sell Plaintiff's vehicle, report and maintain asserted deficiency balances, and retain proceeds and benefits without substantiating lawful authority or complying with statutory and contractual prerequisites.

In furtherance of the conspiracy, USAA and its co-conspirators, including USAA Acceptance, LLC, USAA Auto Direct Trust 2019-1, U.S. Bank National Association (as Indenture Trustee), and entities benefiting from UCC-pledged collateral, committed overt acts, including: (a) presenting USAA Federal Savings Bank as the sole enforcing creditor while concealing depositor, trust, trustee, and secured-party interests; (b) coordinating repossession and sale during unresolved disputes, rescission periods, and arbitration election; (c) coordinating repossession and sale of Plaintiff's vehicle while the alleged receivable was pledged, securitized, and subject to third-party security interests (d) issuing and relying upon standardized, non-responsive communications to defeat validation and accounting requests; (e) asserting enforcement authority inconsistent with the roles disclosed in SEC filings and UCC records; (f) furnishing adverse credit information despite lack of verification and while beneficial and security interests were held by third parties; and (g) retaining proceeds, credits, charge-off benefits, insurance recoveries, or enhancements derived from the alleged obligation while continuing to assert a deficiency. These acts were interdependent, coordinated, and mutually reinforcing, and would not have occurred absent agreement and cooperation among the conspirators.

### Causation and Damages

As a direct and proximate result of the conspiracy, Plaintiff suffered loss of property, financial injury, damage to credit, emotional distress, and deprivation of statutory and

43

contractual rights. Each conspirator is jointly and severally liable for all damages caused by acts taken in furtherance of the conspiracy.

### Discovery Necessity and Amendment Reservation

The identities, roles, communications, agreements, and financial arrangements among the conspirators are facts uniquely within Defendants' possession and control. Plaintiff expressly reserves the right to amend this Complaint to add USAA Acceptance, LLC, USAA Auto Direct Trust 2019-1, U.S. Bank National Association, Federal Home Loan Bank of Dallas, and any additional servicers, trustees, insurers, repossession agents, auction entities, or credit furnishers identified through discovery as having participated in or benefitted from the unlawful acts alleged herein.

### Rule 8 / Rule 12(b)(6) Preservation

Plaintiff has plausibly alleged the existence of an agreement, unlawful acts, overt conduct, and resulting injury. Dismissal at the pleading stage would improperly require Plaintiff to prove the conspiracy before discovery and is therefore unwarranted.

## COUNT XVI – Accounting / Equitable Accounting

### Conclusion (Claim Statement)

Defendant USAA Federal Savings Bank ("USAA") owes Plaintiff an accounting and equitable accounting because USAA exercised control over Plaintiff's payments, negotiable instruments, vehicle collateral, proceeds, charge-offs, and related financial benefits, while the true facts concerning ownership, transfers, offsets, and application of value remain exclusively within USAA's possession and control.

### Rule (Governing Law and Equitable Basis)

Under North Carolina law, equitable accounting is appropriate where: (a) the relationship between the parties involves complex financial transactions; (b) the defendant controls the relevant records and information; and (c) legal remedies are inadequate absent disclosure. Courts grant equitable accounting where a defendant has received money or property under circumstances requiring it to account for its handling, application, and disposition of those assets. Accounting is particularly appropriate where transactions involve securitization, third-party pledges, charge-offs, insurance, or layered financial structures not transparent to the plaintiff. Equity requires that a party seeking to retain benefits or enforce

44

obligations must do so with clean hands and must fully disclose how value was received, applied, offset, or retained.

### *Application (Necessity of Accounting)*

USAA received, controlled, or benefitted from multiple forms of value associated with Plaintiff's account, including but not limited to: (a) payments made by Plaintiff under the refinance agreement; (b) the tender of a collateralized negotiable instrument; (c) the repossessed vehicle and proceeds from its sale; (d) charge-off accounting treatment of the alleged balance; (e) any insurance proceeds, guarantees, credit enhancements, reserve credits, or loss-sharing recoveries; (f) any monetization, securitization, collateral pledging, or transfer of the Credit Application, RISC, or payment stream; and (g) any offsets or recoveries applied internally or through third parties. USAA has failed to provide complete transparent GAAP-compliant accounting showing how these values were applied, credited, offset, or retained, despite repeated written demands, disputes, and regulatory complaints. Plaintiff cannot determine the true balance, if any, owed or whether the obligation has been satisfied, offset, or extinguished, without access to USAA's internal records, third-party agreements, and financial reconciliations.

### *Exclusive Control of Information*

The documents and information necessary to perform a full accounting, including servicing records, general ledger entries, charge-off documentation, insurance or enhancement recoveries, securitization schedules, trust reports, UCC collateral records, and internal application of payments, are solely within USAA's possession and control. Legal remedies are inadequate absent accounting because Plaintiff cannot plead or prove the precise amount of overpayment, offset, or unjust enrichment without discovery of these materials.

### *Equitable Relief Requested*

Plaintiff seeks an order requiring USAA to provide full and complete accounting, including: (a) a detailed payment history and application of all value received; (b) identification of all third parties with an interest in the obligation; (c) disclosure of any securitization, monetization, or collateral pledging; (d) disclosure of charge-off treatment and related financial benefits; (e) disclosure of any insurance, guarantees, or enhancements; and (f) reconciliation of any asserted deficiency balance. Plaintiff further seeks such additional

45

equitable relief as necessary to restore the parties to their lawful positions and to prevent continued unjust enrichment.

### *Rule 8 / Rule 12(b)(6) Preservation*

Plaintiff has plausibly alleged a basis for equitable accounting, including complexity of transactions, exclusive control of information by USAA, and inadequacy of legal remedies. Determination of the true financial status of Plaintiff's account requires discovery and factual development. Dismissal at the pleading stage would improperly deny Plaintiff access to information essential to the adjudication of this case.

## <u>CONCLUSION</u>

This action is not the product of conjecture, theory, or dissatisfaction with contractual outcomes. It arises from a documented course of conduct in which Defendant USAA Federal Savings Bank ("USAA") asserted enforcement authority over Plaintiff's property and alleged obligation without establishing lawful standing, entitlement, or compliance with governing law, while concealing material facts concerning securitization, collateral pledging, monetization, and third-party interests.

Plaintiff's claims are grounded in federal statutes, North Carolina commercial and consumer law, and uniform commercial principles governing negotiable instruments, secured transactions, financial assets, and enforcement authority. The Complaint pleads concrete facts, dates, documents, correspondence, and regulatory filings demonstrating that USAA's conduct extended beyond mere servicing error and into systemic noncompliance.

Importantly, Plaintiff's allegations are corroborated by the findings and enforcement actions of the Office of the Comptroller of the Currency, which issued a Cease and Desist / Consent Order on or about December 18, 2024 against USAA Federal Savings Bank for unsafe or unsound banking practices, including deficiencies in management, internal controls, information technology, consumer compliance, and audit and reporting functions. These findings directly align with the misconduct alleged here; namely, failures of transparency, governance, compliance, and lawful handling of consumer obligations.

This case therefore does not involve speculative challenges to the legitimacy of negotiable instruments or commercial law. On the contrary, negotiable instruments, chattel paper, payment intangibles, and financial assets are expressly recognized under the Uniform

46

Commercial Code, federal banking law, and Supreme Court precedent as lawful monetary and commercial instruments. Plaintiff's claims rest on USAA's failure to lawfully apply, account for, credit, or reconcile value received, while continuing enforcement activity in violation of statutory, contractual, and commercial-law restraints.

Prior to initiating this action, Plaintiff acted in good faith and exhausted every reasonable avenue short of litigation, including repeated written disputes, notices of billing error, rescission notices, arbitration election, demands for validation and accounting, regulatory complaints, and opportunities to cure. USAA failed or refused to provide the documents, explanations, and substantiation solely within its possession and control necessary to resolve the matter.

Judicial intervention is therefore required. Without discovery and court supervision, Plaintiff cannot obtain access to securitization records, UCC collateral treatment, charge-off accounting, insurance or credit-enhancement recoveries, internal authority documents, or entitlement chains necessary to determine whether any enforceable obligation remains, whether Plaintiff's property was wrongfully taken, and whether USAA has been unjustly enriched.

Plaintiff respectfully requests that this Court adjudicate the claims on their merits, compel transparency through discovery and accounting, declare the parties' rights and obligations, and award appropriate legal and equitable relief to prevent continued harm and to ensure that enforcement of consumer obligations occurs only in accordance with law, authority, and good faith.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant USAA Federal Savings Bank, and grant the following relief:

### A. Declaratory Relief

i.     Declare that Defendant lacked and lacks lawful standing, entitlement, or authority to enforce the alleged obligation, repossess Plaintiff's vehicle, assert a deficiency balance, or furnish adverse credit information;

47

ii. Declare the legal effect of Plaintiff's notices of rescission, billing-error disputes, arbitration election, and revocation of authority;

iii. Declare that Defendant's enforcement actions were void, unlawful, or unenforceable as asserted.

## B. Injunctive and Equitable Relief

i. Enjoin Defendant from continuing to collect, enforce, report, or otherwise act upon the alleged obligation absent proof of lawful authority and compliance with governing law;

ii. Order Defendant to correct, delete, or suppress inaccurate credit reporting related to Plaintiff's account;

iii. Order Defendant to provide a full accounting / equitable accounting, as pled, including disclosure of payments, proceeds, charge-offs, insurance or credit enhancements, securitization transfers, UCC collateral treatment, and all offsets or recoveries.

## C. Monetary Relief

i. Award Plaintiff **actual damages** in an amount to be proven at trial;

ii. Award **statutory damages** pursuant to the Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Truth in Lending Act, as applicable;

iii. Award **treble damages** pursuant to N.C. Gen. Stat. § 75-16 for unfair and deceptive trade practices;

iv. Award **restitution and disgorgement** of all sums wrongfully retained by Defendant;

v. Award **consequential and incidental damages** arising from wrongful repossession, loss of use, and credit impairment.

## D. Costs, Fees, and Interest

i. Award costs of suit and litigation expenses;

ii. Award reasonable attorneys' fees where authorized by statute, should such fees be incurred;

48

iii.  Award pre-judgment and post-judgment interest as allowed by law.

**E. Further Relief**

i.  Grant such other and further legal or equitable relief as the Court deems just and proper to fully remedy Defendant's conduct and prevent future harm.

Respectfully submitted,

Anwar Aalaam, pro se
c/o 100 Brookmeade Drive
Statesville, North Carolina 28625
916-365-5291
Anwar.aalaam@gmail.com

**Date:** January ___, 2026

49